UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -x

ROBERT PAVLICA, Ph.D., :

Plaintiff, :

- against - : 03 Civ. 9628 (DC)

LEONARD BEHR and DANIEL WULFF, :

Defendants. :

- - - - - - - - - - - - - - - - - - -x **MEMORANDUM DECISION**

ROBERT PAVLICA, Ph.D., :

Plaintiff, :

- against - : 04 Civ. 8152 (DC)

THE RESEARCH FOUNDATION OF STATE UNIVERSITY OF NEW YORK, :

Defendant. :

- - - - - - - - - - - - - - - - - - -x

**APPEARANCES:** LEVISOHN, BERGER & LANGSAM, LLP
Attorneys for Plaintiff
By: Andrew S. Langsam, Esq.
Marilyn Neiman, Esq.
805 Third Avenue
New York, New York 10022

HESLIN ROTHENBERG FARLEY & MESITI P.C.
Attorneys for Defendants
By: Robert E. Heslin, Esq.
Brett Hutton, Esq.
5 Columbia Circle
Albany, New York 12203

**CHIN, D.J.**

Plaintiff Robert Pavlica, Ph.D., asserts claims of copyright infringement, trademark infringement, and defamation against defendants Leonard Behr, Daniel Wulff, and The Research Foundation of State University of New York ("RF-SUNY").

Defendants moved in limine to preclude certain evidence from being offered at trial. At oral argument on June 7, 2006, I ruled on certain of the in limine motions and reserved decision on others. I address the remaining motions now.[1]

1. **The Number of Works**

Defendants moved to preclude plaintiff from arguing at trial that he was entitled to more than one award of statutory damages. At oral argument, I ruled that statutory damages are to be awarded based on the number of works infringed and not the number of infringements. (Tr. 2-6). The question remains how many "works" are in issue, for the Act provides that, for purposes of statutory damages, "all the parts of a compilation or derivative work constitute one work." 17 U.S.C. § 504(c)(1).

Defendants argue that the items in question are part of a compilation or that they are derivative works such that plaintiff may recover only one award of statutory damages, i.e., one award for one work. Plaintiff's counsel identified eight different "works" that he contends would each support a separate award of statutory damages. The eight items are:

1. the 1994 version of the Teacher's Manual (the "Manual");
2. the 1996 version of the Manual;
3. the 15-day Workshop Schedule (the "Schedule");

---

[1] The facts and prior proceedings are laid out in more detail in Pavlica v. Behr, 397 F. Supp. 2d 519 (S.D.N.Y. 2005) and Pavlica v. Behr, No. 03 Civ. 9628, 2005 WL 3181586 (S.D.N.Y. Nov. 29, 2005).

4. the 2000 version of the Manual;

5. the Teacher's Manual Addendum (the "Addendum");

6. the Sophomore Workbook;

7. the Junior Workbook; and

8. the Senior Workbook.

(Tr. 9-10).

Plaintiff's counsel conceded at oral argument that the 1996 and 2000 versions of the Manual were "derivative" of the 1994 version, but argued that because each was separately registered, each is a separate work that can support a separate award of statutory damages. (Tr. 10-11; see also Pl. Opp. Mem. at 4-7). He further argued that the Schedule, the Addendum, and each of the three Workbooks are separate, independent works and not mere derivative works or parts of a compilation. (Tr. 12-14).

I conclude that the eight items are not separate, independent works. Rather, I hold that the first five items -- the three versions of the Manual, the Addendum, and the Schedule -- are part of a compilation or are derivative works that together can only be considered "one work" for purposes of statutory damages. Hence, these five items can only support one award of statutory damages. I hold also that the three Workbooks are a compilation that a reasonable jury could conclude constituted a separate "work" independent from the other five items, but that a reasonable jury could only conclude that the three Workbooks are derivative of each other or are part of a

compilation. Hence, plaintiff will be permitted to seek a second statutory damages award for the three Workbooks, taken together as one work.

The Act defines "compilation" and "derivative work" as follows:

> A "compilation" is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. The term "compilation" includes collective works.
>
> . . .
>
> A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaboration, or other modification which, as a whole, represent an original work of authorship, is a "derivative work."

17 U.S.C. § 101.

The courts have defined "works" for these purposes to mean items that "live their own copyright life." See, e.g., MCA Television Ltd. v. Feltner, 89 F.3d 766, 769 (11th Cir. 1996); Gamma Audio & Video, Inc. v. Ean-Chea, 11 F.3d 1106, 1116 (1st Cir. 1993); Robert Stigwood Group, Ltd. v. O'Reilly, 530 F.2d 1096, 1105 (2d Cir. 1976). The question is "whether each expression has an independent economic value and is, in itself, viable." MCA Television, 89 F.3d at 769; accord Gamma, 11 F.3d at 1116-17. As the leading treatise on copyright law writes in

explaining the case law:

> [T]o qualify for a separate minimum award, the work that is the subject of a separate copyright would have to be in itself musically, dramatically, or otherwise viable, even if not presented in conjunction with the other work in which it is incorporated.

Nimmer § 14.04[E][1] at 14-93 (footnotes omitted); see also, e.g., Walt Disney Co. v. Powell, 897 F.2d 565, 569-70 (D.C. Cir. 1990) (copying of six different poses of Mickey Mouse and Minnie Mouse held to be infringement of only two works, i.e., one each of Mickey and Minnie, even though six images were separately copyrighted); Robert Stigwood Group, 530 F.2d at 1104-05 (copying of music, libretto, and vocal score of a rock opera held to constitute one infringement, even though each was copyrighted separately).

At least two cases have specifically addressed the issue in the context of educational training materials. In Video Aided Instruction, Inc. v. Y & S Express, Inc., Magistrate Judge Levy of the Eastern District of New York concluded that study materials accompanying educational materials were not separate, independent works:

> [T]he study booklets and audio portions [separate audio tapes] of the educational videocassette series are not separate viable works worthy of separate awards. Instead, these booklets and audio portions are merely sub-units of the four educational video-cassette series, whose viability is wholly dependent on the video-cassettes themselves.

No. 97 CV 518 CBA, 1996 WL 711513, at *5 (E.D.N.Y. Oct. 29, 1996).

Similarly, in Kepner-Tregoe, Inc. v. Carabio, No. 8-71025, 1979 WL 1072 (E.D. Mich. 1979), the court was presented with a claim that defendants infringed plaintiff's copyrighted teaching materials. Plaintiff had prepared materials for its "Apex II" program, geared to train middle and top level executives; materials for its "Genco II" program, geared to train "front-line" management and supervisors; and "LDI" materials, which were used to train the instructors who taught the Apex II and Genco II programs. Id. at **3, 17. The three sets of materials were separately copyrighted, and plaintiff argued that each set of materials was a separate work. Id. at *17. The court agreed that the Apex II and Genco II materials were "sufficiently distinct" to constitute separate works because they were geared to different audiences with different levels of sophistication. Id. It held, however, that the LDI materials were not a "separate work":

> [The LDI materials] are by nature derivative, being used to teach others how to teach Apex II and Genco II. In fact, some portions of the LDI material are verbatim reproductions of material found in Genco II and Apex II. Moreover, the LDI materials would be useless if Apex II and Genco II did not exist. The LDI materials could not "live their own copyright life," . . . because without Genco and Apex they would have no purpose.

Id. (quoting Robert Stigwood Group, 530 F.2d at 1105).

Here, the later versions of the Manual, the Addendum, and the Schedule do not "live their own copyright life." They do not have independent economic value, and they are not by themselves economically viable. The Schedule is by nature

derivative and it is meaningless without the Manual. It has no purpose on its own as it merely lays out a schedule with repeated references to the Manual, using terms that appear in the Manual and that have little meaning without reference to the Manual. (PX 13). Similarly, the Addendum is by nature derivative, as it merely provides additional samples of papers written by students and a booklet prepared for a science symposium, to be used with the Manual. Notably, the applications for the three registrations confirm that the items following the original Manual are derivative in nature or parts of a compilation. (See Def. Mem. re One Award of Statutory Damages at 5-8). A reasonable jury could only conclude that the three Manuals, the Addendum, and the Schedule together constitute "one work."

Although plaintiff concedes that the 1996 and 2000 versions of the Manual are derivative works of the 1994 Manual, he seems to suggest that even derivative works can support multiple statutory damages awards as long as each is separately registered. As the case law shows, this is simply not so, as related works have been held to be derivative works or part of a compilation even when they were separately copyrighted. See, e.g., Walt Disney, 897 F.2d at 569-70; Robert Stigwood Group, 530 F.2d at 1105; Kepner-Tregoe, 1979 WL 1072, at *17; see also Nimmer § 14.04[E][1] at 14-93; Gamma Audio, 11 F.3d at 1117 n.8 ("As the legislative history to § 504(c)(1) makes clear, the number of copyright registrations is not the unit of reference for determining the number of awards of statutory damages.").

The three Workbooks are different. Although they arguably are revisions, elaborations, or modifications of the Manual and therefore "derivative" of the Manual, they also arguably have an independent economic life and arguably have value on their own. A review of the Workbooks suggests that they can be used without the Manual or other materials; they can simply be presented to students. In fact, at oral argument plaintiff's counsel represented that "Dr. Pavlica does sell workbooks to school districts." (Tr. 30). The Workbooks can be used directly by students as they study science, whereas the Manual, Addendum, and Schedule are used to train teachers who will teach the students. See Kepner-Tregoe, 1979 WL 1072, at *17 (holding as separate works two sets of materials geared to different audiences). The three Workbooks, however, clearly are related to each other, even though they are for sophomores, juniors, and seniors, respectively. They build on each other and are related to each other. They are derivative of each other and are parts of a compilation of materials to be used by science students. Accordingly, as a matter of law the three Workbooks are one work, at most, and together they are arguably a second "work" that could support a second award of statutory damages.

Accordingly, this prong of defendants' motion in limine is granted in part and denied in part. At trial plaintiff may seek two awards of statutory damages -- one for the "work" consisting of the compilation consisting of the three Manuals, the Schedule, and the Addendum and one for the "work" consisting

of the compilation consisting of the three Workbooks. Unless the evidence presented at trial shows that one side is entitled to judgment as a matter of law, the jury will be asked to decide whether the items in question constitute one work or two works.

2. **Defamatory Statements**

Defendants also moved to preclude evidence of damage to Dr. Pavlica's reputation, arguing that the only cause of action that could support such damages was his defamation claim. At oral argument, the Court instructed plaintiff's counsel to identify the purportedly defamatory statements. On June 7, 2006, plaintiff wrote a letter to the Court identifying ten statements contained in six documents, which he claims defamed him. The statements are as follows:

A. **August 2000 Email**

In an August 2000 email from Wulff to Dr. Charles Granger, Professor of Biology and Education at the University of Missouri-St. Louis, Wulff attached what appears to be a draft of a letter terminating Pavlica from the Science Research in the High School Program. The draft contained the following statements:

- "I have made the decision to terminate your association with the NSF grant, effective immediately. . . . I cannot risk the chance of another disastrous year with you on the team." (PX 31 at BW2268).

- "However on August 4, in a telephone conversation with Len Behr, you stated that he should not have told teachers

they could copy materials from the teacher's workbook because it was illegal. Your statement to Mr. Behr is in direct contradiction to the June 26 directive." (Id.).

B. **August 11, 2000, Note**

In a note dated August 11, 2000, Wulff wrote to Wayne Sukow of the National Science Foundation Division of Elementary, Secondary, and Informal Education:

- "The reasons for termination [of Pavlica] are many, but all distill down to his insensitivity and lack of judgment in dealing with others." (PX 34).

C. **March 8, 2001, Letter**

In a March 8, 2001, letter, Dr. Wulff wrote to Jeanette Kim, the Assistant Director of Education of the New York Academy of Sciences:

- "The position of [RF-SUNY] and the project is that the manuals and workbooks may be copied freely by teachers, and shared with their students in connection with classroom instructional activities, and that no fee may be charged to teachers, schools districts or students for this use." (PX 40).
- "[T]eachers participating in the Authentic Science Research course may continue to copy and use the manual and workbook without payment of a fee." (Id.).
- "At the same time, we do not claim that Dr. Pavlica is prohibited from offering to sell revised copies of the manual and workbook, and supplemental material he develops, on an optional basis." (Id.).

D. **July 16, 2001, Letter**

In the July 16, 2001, form letter addressed to "School Administrator" from Wulff, there was the following statement:

- "You may have recently received a letter from Dr. Robert Pavlica demanding that you buy his Student Workbooks (consisting of telephone log forms and the like) for your Authentic Science Research course. There is no justification for his demand." (PX 44).

E. **July 30, 2001 Letter**

Gregory Stevens and Grace Kelly, the Director and Assistant Director of the University in the High School Program, signed a July 30, 2001, letter, allegedly written with Wulff's assistance, that states:

- "[Y]ou are in receipt of a letter from Dr. Robert Pavlica effectively demanding that you buy a set of textbooks from him in order to continue to offer the Authentic Science Research courses at your high school." (PX 46).

- "[T]here is no valid basis for his threat of a suit for copyright infringement against any of you who were trained through the National Science Foundation workshops." (Id.).

F. **July 30, 2001 Email**

In a July 30, 2001, email, Wulff wrote to Marilyn Wagner:

- "The short answer to your long memo, is 'Disregard

Pavlica's letter!'" (PX 45).

I conclude, as a matter of law, that none of these statements is a proper basis for a defamation claim.

To state a claim for defamation under New York law,[2] "the claimant must allege facts sufficient to support a finding of a published statement concerning the claimant that is both false and defamatory." Cytyc Corp. v. Neuromedical Sys., Inc., 12 F. Supp. 2d 296, 301 (S.D.N.Y. 1998). Libel is written or printed defamation. Celle v. Filipino Reporter Enter., Inc., 209 F.3d 163, 176 (2d Cir. 2000). To recover on an action for libel under New York law, a plaintiff must prove the following five elements: (1) a written defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault; 4) falsity of the defamatory statement; and (5) special damages or per se actionability. Id.

A written or published statement may be considered "defamatory if it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community." Golub v. Enquirer/Star Group, Inc., 89 N.Y.2d 1074, 1076 (1997) (quoting Mencher v. Chesley, 297 N.Y. 94, 100 (1947)) (internal quotation marks omitted). Nevertheless, even where a statement meets this standard, "it is 'fundamental that truth is an absolute,

---

[2] In the complaints, plaintiff asserts that his common law claims arise under New York law. (Compls. ¶ 1). Likewise, defendants apply New York law in discussing the merits of plaintiff's defamation claim. (Def. June 8, 2006, Letter).

unqualified defense to a civil defamation action,' and 'substantial truth' suffices to defeat a charge of libel." Weber v. Multimedia Entm't, Inc., No. 97 Civ. 0682 (JGK), 2000 WL 526726, *10 (S.D.N.Y. May 2, 2000) (applying New York law and quoting Guccione v. Hustler Magazine, Inc., 800 F.2d 298, 301 (2d Cir. 1986)).

Statements of subjective opinion are not actionable under New York law. Protic v. Dengler, 46 F. Supp. 2d 277, 281 (S.D.N.Y.), aff'd, 205 F.3d 1324 (2d Cir. 1999). "There is no bright line test to aid in determining whether a statement is one of opinion or fact, as expressions of opinion may often imply an assertion of objective fact." Belly Basics, Inc. v. Mothers Work, Inc., 95 F. Supp. 2d 144, 145 (S.D.N.Y. 2000) (quoting Milkovich v. Lorain Journal Co., 497 U.S. 1, 18, (1990)) (internal quotation marks omitted). "[S]o-called 'expressions of opinion'" are still actionable if they "imply assertions of objective fact." Levin v. McPhee, 119 F.3d 189, 196 (2d Cir. 1997).

New York law prescribes a three-factor test to determine whether a statement is a statement of fact or a statement of opinion: "(1) whether the challenged statements have a precise and readily understood meaning; (2) whether the statements are susceptible of being proven false; and (3) whether the context signals to the reader that the statements are more likely to be expressions of opinion rather than fact." Cytyc Corp., 12 F. Supp. 2d at 301-02. The determination of whether a

statement is one of fact or of opinion is a question of law for the court. Protic, 46 F. Supp. 2d at 281 (citing Levin v. McPhee, 119 F.3d at 196).

The statements described by Pavlica do not constitute libel. First, all of the statements cited by Pavlica clearly express the authors' opinions rather than fact. For example, the statement in the August 2000 email describing the "disastrous year" and statement in the August 11, 2000, note describing Pavlica's "insensitivity and lack of judgment in dealing with others" are not capable of being proven false; rather, they clearly express Wulff's subjective opinions. They do not "imply assertions of objective fact." Levin, 119 F.3d at 196.

The remaining statements cited by Pavlica -- those in the August 2000 and July 30, 2001, emails and the March 8, July 16, and July 30, 2001, letters -- express defendants' opinions as to the relative legal rights of the parties and are not factual statements about Pavlica. For example, the statements in the March 8, 2001, merely set forth RF-SUNY's position regarding who may copy the manuals. The only reference to Pavlica is the statement that RF-SUNY "do[es] not claim that Dr. Pavlica is prohibited from offering to sell revised copies of the [materials]." (PX 40). The statements disputing the accuracy of Pavlica's claim to exclusive rights to the Manual likewise expressed defendants' opinion. See Cytec, 12 F. Supp. 2d at 302 (concluding that statement "[w]e are confident that these petitions are frivolous and without merit" was opinion).

Second, even assuming some of these statements expressed facts, none of the statements cited by Pavlica "tend[] to expose" Pavlica "to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community" as they must to be considered defamatory. Golub, 89 N.Y.2d at 1076. Read in context, the August 11, 2000, note describing Pavlica's "insensitivity and lack of judgment in dealing with others" -- probably the most negative of all the comments -- simply does not rise to this level. *The statement was contained in an explanation* Wulf was giving as to why defendants were going to terminate their relationship with Pavlica; the tone and overall content of the note show that there was absolutely no intent to expose Pavlica to hatred, contempt, or aversion, or to instill an "evil or unsavory opinion of him" in the minds of a substantial number of the community.

Similarly, the statement in the August 2000 email referring to "the chance of another disastrous year" was contained in a draft of a letter that Wulff was apparently going to send to Pavlica explaining his reasons for terminating the relationship. The draft was being sent for review and comment before it was finalized for delivery to Pavlica. In fact, the person reviewing the draft letter inquired as to whether the situation could be resolved "without termination." (PX 31). In context, the statement in the draft letter simply does not rise to the level of defamation.

As to the statements regarding the relative legal rights of the parties to the use of the Manual, clearly they do not defame Pavlica on their face. Pavlica argues that the statements are defamatory because they imply that he is dishonest. See, e.g., Pisani v. Westchester County Health Care Corp., 424 F. Supp. 2d 710, 717 (S.D.N.Y. 2006) ("defamation by implication . . . involves 'false suggestions, impressions and implications arising from otherwise truthful statements'") (quoting Armstrong v. Simon & Schuster, Inc., 85 N.Y.2d 373, 381 (1995)). I disagree. Allegedly defamatory statements should be construed "not with the close precision expected from lawyers and judges but as they would be read and understood by the public to which they are addressed." DiBella v. Hopkins, No. 01 Civ. 11779, 2002 WL 31427362, at *2 (S.D.N.Y. Oct. 30, 2002). Defendants' statements disputing Pavlica's claims to the exclusive rights in his materials lack a "precise and readily understood meaning" that Pavlica is dishonest. Cytyc Corp., 12 F. Supp. 2d at 301-02.

Though courts have cautioned against "'strain[ing]' to interpret such writings 'in their mildest and most inoffensive sense to hold them nonlibelous,'" DiBella, 2002 WL 31427362, at *2, it is equally clear that courts should not strain to interpret statements as defamatory, Aronson v. Wiersma, 65 N.Y.2d 592, 594 (1985). The Court cannot interpret these statements as defamatory without giving them "a stained and artificial construction." Aronson, 65 N.Y.2d at 594.

Because the statements cited by Pavlica are neither expressions of fact nor defamatory, his claim for defamation is dismissed.

**3. Remaining Motions**

Even with the defamation claim dismissed, there remains the question whether plaintiff can seek to prove damage to his reputation under some other theory, i.e., copyright infringement. Though it is unclear whether a plaintiff in a copyright case may recover damages for damage to reputation, the cases do recognize the viability of a similar claim of loss of goodwill. See, e.g., Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1547 (10th Cir. 1996). As a theoretical matter, plaintiff may be able to establish such injury. The evidence of damage to his reputation or goodwill, however, cannot be speculative, nor can any such damages be duplicative of other damages. Abeshouse v. Ultragraphics, Inc., 654 F.2d 467, 471 (2d Cir. 1985); JBJ Fabrics Inc. v. India Garments Inc., No. 92 Civ. 8324 (LJF), 1993 WL 330464, *4 (S.D.N.Y. Aug. 24, 1993). As with any claim for damages, plaintiff must provide the jury with a reasonable evidentiary basis upon which to fashion an award of damages. Accordingly, this prong of defendants' motions is denied, without prejudice to objections at trial to inadmissible evidence or to a motion for judgment as a matter of law.

Defendants' motion to preclude plaintiff from seeking "lost profits" is denied, without prejudice to any objections

that defendants may assert at trial and without prejudice to any motion for judgment as a matter of law. Plaintiff may rely only on admissible evidence, not speculation, and he will also be precluded from offering any evidence that he failed to produce in discovery in response to a proper discovery request. Along these lines, I will sustain any objection defendants' may make to any conclusory assertion by Pavlica that he believes that all the teachers who attended defendants' workshops would have gone to his workshops if defendants had not infringed on his copyrighted materials. Without a factual basis, any such assertion would be sheer speculation. This is particularly so given that teachers were apparently paid a stipend to attend defendants' courses whereas they would have had to pay some $1,900 to attend plaintiff's courses. It is hard to imagine that any of these teachers would have been willing to do so.

Defendants' motion to preclude plaintiff from seeking copyright damages after 2003 is denied, without prejudice to the making of a motion for judgment as a matter of law at the proper time. Of course, if no evidence is received of any infringement after 2003, such a motion will be granted.

Defendants' motion to preclude evidence, argument, and testimony relating to the financial aspects of plaintiff's business is denied, without prejudice to any objections defendants may have at trial. Again, plaintiff will be limited to non-speculative, admissible evidence.

Defendants' motion to preclude plaintiff from seeking trademark damages is granted in part and denied in part. The motion is granted as to any trademark claim based on the registration, as it appears there was no use by defendants of the mark after notice of registration. (Tr. 57). It is denied as to the common law claim.

**CONCLUSION**

For the foregoing reasons, defendants' motions in limine are denied in part and granted in part, as stated on the record and set forth above.

SO ORDERED.

Dated: New York, New York
June 9, 2006

DENNY CHIN
United States District Judge